Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| JOSUÉ ORTIZ COLÓN<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | KLRA202300413 | Revisión de Decisión Administrativa procedente del Departamento de Corrección y Rehabilitación<br><br>Sobre:<br>Programa de Desvío |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de abril de 2024.

Comparece por derecho propio y en forma *pauperis*[1] el señor Josué Ortiz Colón (recurrente), quien se encuentra bajo la custodia del Departamento de Corrección y Rehabilitación (DCR) en la Institución Correccional Guerrero en Aguadilla, y nos solicita que revoquemos una determinación emitida el 14 de junio de 2023, y notificada el 11 de julio de 2023, por el Programa de Desvíos del DCR, mediante la cual se le denegó su participación en el programa de pase extendido con monitoreo electrónico.

Evaluado su escrito, y el alegato en oposición presentado por el DCR, resolvemos confirmar la determinación recurrida.

**I.**

El 15 de marzo de 2000, el recurrente fue sentenciado a cumplir 198 años de cárcel por los delitos de asesinato en primer grado (2 cargos) y Artículo 98A del Código Penal de 1974, todo ello por hechos ocurridos el 27 de julio de 1999. Este cumplirá el mínimo

---

[1] El recurrente acompañó la *Solicitud y Declaración para que se Exima de Pago de Arancel por Razón de Indigencia,* debidamente cumplimentado y juramentado.

de su sentencia el 16 de agosto de 2024, y el máximo el 26 de julio de 2194.

El 21 de abril de 2023, el recurrente fue referido a evaluación para los programas de pase extendido con monitoreo electrónico, desvío religioso y Hogar CREA. El 14 de junio de 2023, el DCR le denegó al recurrente su participación en todos los programas. La razón para la denegatoria se fundamentó en que el recurrente:

> No cualifica en virtud de lo dispuesto en la Ley 49 de 26 de mayo de 1995.
>
> Delito excluyente – Asesinato en 1er grado.
>
> (Desde la fecha de los hechos al presente bajo el Plan de Reorganización del DCR #2 del 21 de noviembre de 2011 en su Artículo #16 se excluye del beneficio de Programas de Desvío el delito de Asesinato en Primer Grado).

El recurrente fue notificado de dichas determinaciones el 11 de julio de 2023. Inconforme con el dictamen relativo al programa de pase extendido con monitoreo electrónico[2], el 1 de agosto de 2023, acudió ante nos mediante el presente recurso y apuntó los siguientes señalamientos de error:

> Erró el D.C.R. al no basar su determinación en evidencia sustancial, erró en la aplicación e interpretación de las leyes y los reglamentos que se le han encomendado administrar, lesionando así los derechos fundamentales del peticionario, al actuar así, arbitraria, caprichosa, irrazonable e ilegalmente, habiendo emitido una determinación carente de base racional y contraria a derecho.
>
> Erró el D.C.R. al aplicar las disposiciones de la Ley Núm. 49-1995 incorrectas, ya que la Ley Núm. 79-2022, la derogó. (Sección 2 -cláusula derogatoria, Ley #79, supra.), la que también expone en su Exposición de Motivos, segundo párrafo que: … "luego que el confinado haya completado una parte sustancial de su sentencia y exhibiera buena conducta, por lo que la pena carcelaria haya sido efectiva, que se le niegue la oportunidad de brindarle un programa que propenda a su total rehabilitación y lo prepara para la libre comunidad. (Véase intención del Legislador).

---

[2] El recurrente reconoce expresamente en su recurso que solamente le interesa que se revoque la determinación de denegarle participación en el programa de pase extendido con monitoreo electrónico.

Erró el D.C.R. al no conceder al Peticionario poder participar del Programa de Pase Extendido con Monitoreo Electrónico, ignorando así su actuación supone un grave perjuicio para el Peticionario, en tanto interrumpió el proceso de rehabilitación emprendido por este, proceso que constituye la meta principal del sistema penal según la carta magna.

Erró el D.C.R. al incumplir con el mandato constitucional de rehabilitación al utilizar como único factor en la determinación denegada, que su delito de Asesinato en Primer Grado lo excluye de participar en dicho programa en virtud de la Ley 49 del 26 de mayo de 1995, cuando la misma Ley 49-1995, supra, luego de los confinados haber cumplido un % o 10 o 20% de la sentencia y haber exhibido buena conducta, pueden participar mediante monitoreo electrónico en el Centro de Rehabilitación y Nuevas Oportunidades en Arecibo P.R. O.A. DCR-2018-07 Aprobada el 21 de diciembre de 2018.

Erró el D.C.R. al denegar el Programa de Pase Extendido con Supervisión Electrónica al Peticionario, impidiendo y/o coartando la política pública de la Agencia, Sección 19 Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico L.P.R.A. Tomo 1, ya que a través de dicho programa viabiliza que el confinado trabaje para el sustento económico de sus familiares o estudios mientras utiliza un brazalete electrónico, el cual es el deseo e interés del suscribiente.

Por su parte, en su alegato en oposición, *Escrito en Cumplimiento de Resolución,* el DCR arguyó que la decisión del programa de desvío fue una razonable y sustentada por el expediente administrativo.

**II.**

**A.**

Es doctrina reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial.[3] Ello, en vista al gran conocimiento especializado y experiencia que las agencias ostentan.[4] Esta deferencia se debe a que son estos los que cuentan

---

[3] *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 114 (2023); *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *OSC v. CODEPOLA*, 202 DPR 842, 853 (2019).
[4] *Hernández Feliciano v. Mun. Quebradillas,* supra; *OCS v. Universal*, 187 DPR 164, 178 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).

con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados.[5]

Así pues, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[6] El criterio rector para la revisión de este tipo de determinación es el de razonabilidad, esto es, si la actuación de la agencia fue ilegal, arbitraria, o tan irrazonable que constituye un abuso de discreción.[7]

La revisión usualmente comprende las siguientes áreas: (1) si se concedió el remedio apropiado; (2) si las determinaciones de hechos son conformes al principio de evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho son correctas. [8]

Así pues, las determinaciones de hechos se deben sostener si se fundamentan en evidencia sustancial que surja de la totalidad del expediente administrativo.[9] Sin embargo, la deferencia antes mencionada no se extiende de manera automática a las conclusiones de derecho emitidas por las agencias, puesto que éstas serán revisables en todos sus aspectos por el tribunal.[10]

Por consiguiente, la deferencia a la determinación de una agencia administrativa cederá cuando: (1) no esté basada en evidencia sustancial; (2) el ente administrativo erró al aplicar o interpretar las leyes o los reglamentos que se les ha encomendado

---

[5] *Hernández Feliciano v. Mun. Quebradillas,* supra*; OEG v. Martínez Giraud,* 210 DPR 79, 88-89 (2022); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 821 (2012); *Accumail P.R. v. Junta Sub. A.A.A.,* 170 DPR 821, 829 (2007); *Mun. San Juan v. Plaza Las Américas,* 169 DPR 310, 324 (2006); *Otero v. Toyota,* 163 DPR 716, 727 (2005); *Rebollo v. Yiyi Motors,* 161 DPR 69 (2004).
[6] *Hernández Feliciano v. Mun. Quebradillas,* supra*; Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 215 (2012).
[7] *Hernández Feliciano v. Mun. Quebradillas,* supra; *Batista, Nobbe v. Jta. Directores,* supra, pág. 216.
[8] *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 115; *Moreno Lorenzo y otros v. Depto. Fam.,* supra, págs. 839-840; *Asoc. Fcias. v. Caribe Specialty, et al. II,* 179 DPR 923, 940 (2009).
[9] *Hernández Feliciano v. Mun. Quebradillas,* supra.
[10] *Íd.*

administrar; (3) el organismo administrativo actuó de manera arbitraria, irrazonable o ilegal, realizando determinaciones carentes de base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales.[11]

**B.**

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, dispone que será política pública del Estado reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva, y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social.[12] A la luz de esta disposición constitucional, en nuestra jurisdicción se han aprobado leyes que promueven la política pública de rehabilitación de los delincuentes que, a su vez, salvaguardan la seguridad de la comunidad.

Tal fue el caso de la Ley Núm. 116 del 22 de julio de 1974 (Ley Núm. 116), conocida como *Ley Orgánica de la Administración de Corrección*, que fue aprobada con el propósito de crear la Administración de Corrección y facultarla para administrar un sistema correccional integrado e implantar enfoques para estructurar formas de tratamiento individualizado y programas de rehabilitación en la comunidad.[13] La Ley Núm. 49 del 26 de mayo de 1995 (Ley Núm. 49) enmendó la mencionada Ley Núm. 116, a los efectos de añadir el Artículo 10-A, que leía:

> Artículo 10-A.- No serán elegibles para participar en los programas de desvío o tratamiento y rehabilitación establecidos por la Administración de conformidad con las facultades que le confiere esta Ley, ni en el Programa de Hogares de Adaptación Social, las siguientes personas:
>
> a. Toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:

---

[11] *Íd.,* pág. 114.
[12] *López Borges v. Adm. Corrección,* 185 DPR 603, 619 (2012).
[13] 4 LPRA ant. sec. 1111.

(1) asesinato; violación; incesto; sodomía o actos lascivos o impúdicos cuando la víctima fuera menor de catorce (14) años;

(2) violaciones a la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como "Ley de Sustancias Controladas de Puerto Rico", excepto las violaciones al Artículo 404 de dicha Ley;

(3) violaciones a la Ley Núm. 134 de 28 de junio de 1969, según enmendada, conocida como "Ley de Explosivos de Puerto Rico".

b. Toda persona convicta por la comisión de cualquier delito grave que no sea de los incluidos en el inciso a de este Artículo, hasta que haya cumplido por lo menos un diez (10) por ciento de la sentencia de reclusión en una institución penal, excluyendo toda clase de bonificaciones, y se determine por el Administrador de Corrección que no representa una amenaza para la comunidad.

c. Toda persona convicta por delito grave a la cual se le haya hecho una determinación de reincidencia agravada o reincidencia habitual de conformidad a las disposiciones de la Ley Núm. 115 de 22 de julio de 1974, según enmendada, conocida como "Código Penal del Estado Libre Asociado de Puerto Rico".

Se podrá excluir de la aplicación de las disposiciones de este Artículo a los confinados bajo la custodia de la Administración que confronten problemas de salud con prognosis de vida corta y con condiciones fisiológicas limitantes. Para que proceda esta exclusión deberá mediar una recomendación del Programa de Salud Correccional acompañada de una certificación médica del confinado con la prognosis de vida. Además los confinados no deben de constituir peligro para la comunidad. (Énfasis suplido).

A su vez, el Artículo 4 de la Ley Núm. 49 expresaba que "las disposiciones de esta Ley aplicarán a todos los convictos cumpliendo sentencia bajo la custodia y supervisión de la Administración de Corrección".[14]

Después, mediante la Orden Administrativa Núm. AC-2011-07, el Departamento de Corrección y Rehabilitación estableció que, a partir del 17 de marzo de 2011, cada evaluación para conceder un pase a algún miembro de la población correccional sería realizada basándose en el reglamento vigente al momento de cometerse los

---

[14] 4 LPRA ant. sec. 1112n.

hechos que configuran el delito por el cual el confinado fue sentenciado.

En lo pertinente al caso que nos ocupa, el Reglamento Núm. 5065 de 4 de mayo de 1994 estableció el procedimiento para el programa de supervisión electrónica. A pesar de que la Ley Núm. 49 específicamente establecía que sería inelegible para participar de programas de desvío o tratamiento y rehabilitación la persona convicta que esté cumpliendo sentencia por delito de asesinato, el Reglamento Núm. 5065 no excluía a los convictos de asesinato en primer grado del privilegio de supervisión electrónica.

Sin embargo, la posterior aprobación del Reglamento Núm. 6041 de 27 de octubre de 1999, sí excluyó del privilegio de supervisión electrónica a los convictos por asesinato en primer grado. Esto continuó así con el *Reglamento para la Implementación del Programa Integral de Reinserción Comunitaria*, Núm. 7640 de 19 de diciembre de 2008, que diversificó los programas de tratamiento y rehabilitación de los confinados, para incluir programas de desvío religiosos, Hogares CREA y de adaptación social. Este Reglamento Núm. 7640 expresamente excluía de participar del programa de reinserción comunitaria a las personas convictas de asesinato en primer grado.

## C.

El 21 de noviembre de 2011, se aprobó el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*[15]. Éste derogó expresamente la *Ley de la Administración de Corrección.* Dicho Plan de Reorganización creó al Departamento de Corrección y Rehabilitación como el organismo gubernamental responsable de implementar la política pública relacionada al sistema correccional y al proceso de rehabilitación de adultos y de

---

[15] 3 LPRA Ap. XVIII.

menores, así como de la custodia de todos los ofensores y transgresores del sistema de justicia criminal del país.[16]

El Plan de Reorganización le confirió al Secretario del Departamento de Corrección y Rehabilitación, la facultad y el deber de desarrollar programas y servicios que permitan y viabilicen la rehabilitación de la población correccional y faciliten su reintegración a la libre comunidad.[17] En específico, el Artículo 16 del Plan de Reorganización, *supra*, dispone que:

> El Secretario establecerá mediante reglamento los objetivos de cada programa de desvío, cómo habrán de operar, los criterios y condiciones para la concesión de dicho privilegio, así como también los criterios, condiciones y procesos que habrá de seguirse para la revocación del privilegio y administrará los programas de desvío donde las personas convictas puedan cumplir parte de su sentencia fuera de la institución correccional. La opinión de la víctima habrá de tomarse en consideración como uno de los criterios para conceder el privilegio de ubicar a un miembro de la población correccional en un programa de desvío. **No serán elegibles** para participar en los programas de desvío establecidos por el Departamento las siguientes personas:
>
> (a) Toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:
>> (1) Producción, posesión y distribución de pornografía y la utilización de un menor para la pornografía infantil;
>> (2) violaciones a las secs. 2101 et seq. del Título 24, conocidas como "Ley de Sustancias Controladas de Puerto Rico", excepto las violaciones a la sec. 2404 del Título 24;
>> (3) violaciones a las secs. 561 et seq. del Título 25, conocidas como la "Ley de Explosivos de Puerto Rico";
>> (4) **toda persona convicta por delito grave de primer grado**.[18]
>
> (b) Toda persona convicta por la comisión de cualquier delito grave que no sea de los incluidos en el inciso (a) de esta sección, hasta que haya cumplido por lo menos un veinte (20) por ciento de la sentencia de reclusión en una institución correccional, excluyendo toda clase de

---

[16] Art. 4 del Plan de Reorganización, *supra.*
[17] Art. 7 (a) del Plan de Reorganización, *supra.*
[18] El Código Penal de 2004 introdujo varios cambios al régimen de penas en nuestro ordenamiento. Entre otros asuntos, su Art. 16 clasificó los delitos graves en cuatro tipos, a saber: grave de primer grado, grave de segundo grado, grave de tercer grado y grave de cuarto grado; y su Art. 66 dispuso las penas correspondientes según la clasificación de los delitos. Véase, 33 LPRA ant. secs. 4644 y 4694.

bonificaciones y se determine por el Secretario que no representa una amenaza para la comunidad;

(c) toda persona convicta por delito grave a la cual se le haya hecho una determinación de reincidencia agravada o reincidencia habitual de conformidad a las disposiciones del Código Penal de Puerto Rico de 2004, y

(d) toda persona convicta mientras no haya satisfecho la pena especial dispuesta en el Artículo 67 del Código Penal de Puerto Rico de 2004, antes citada.

Se podrá excluir de la aplicación de las disposiciones de este Artículo a los miembros de la población correccional bajo la custodia del Departamento que confronten problemas de salud con prognosis de vida corta y con condiciones fisiológicas limitantes. Para que proceda esta exclusión deberá mediar una recomendación del Departamento acompañada de una certificación médica sobre el miembro de la población correccional con la prognosis de vida. Además, los miembros de la población correccional no deben representar peligro para la comunidad.

Nada de lo dispuesto en este Artículo menoscaba el deber del Secretario de proveer y establecer programas de tratamiento y rehabilitación conforme a lo dispuesto en este Plan. (Énfasis suplido).[19]

A tenor con el Plan, se aprobaron los *Reglamento[s] para del Programa Integral de Reinserción Comunitaria,* Núm. 8177 de 12 de abril de 2012, Núm. 8559 de 17 de febrero de 2015, y Núm. 9242 de 11 de diciembre de 2020. Estos reglamentos excluían de participar de los programas de desvío a toda persona convicta por delito grave de segundo grado o de un delito de mayor severidad. De la misma forma, el vigente Reglamento Núm. 9488 de 9 de agosto de 2023, excluye de participación de los programas de desvío a aquellos convictos de delito grave de primer grado.

**III.**

En el presente caso el recurrente fue sentenciado a pena de cárcel por el delito de asesinato en primer grado y otros delitos

---

[19] El Artículo 87 del Plan de Reorganización, supra, dispone que "[t]odos los reglamentos que gobiernan la operación de las funciones y programas de las diferentes agencias componentes del Departamento, que estén vigentes a la fecha en que tenga efectividad la transferencia y que sean compatibles con este plan, continuarán en vigor hasta que sean sustituidos, enmendados o derogados por el Secretario, según sea el caso, conforme a la reestructuración de funciones que se establecen en este Plan y a las demás leyes que le sean aplicables".

estatuidos en el Código Penal de 1974, por hechos ocurridos el 27 de julio de 1999. Para la fecha de los hechos por los cuales resultó convicto, se encontraba vigente la *Ley de la Administración de Corrección*, según enmendada. Dicha ley establecía de manera expresa que sería inelegible para participar de programas de desvío o tratamiento y rehabilitación aquella persona convicta que esté cumpliendo sentencia por delito de asesinato. De ahí que la determinación impugnada en el presente recurso expresara que al recurrente se le denegó su participación en el programa de pase extendido con monitoreo electrónico debido a la exclusión de la Ley Núm. 49.

La Ley Núm. 49 excluye a las personas condenadas por el delito de asesinato de participar en el programa de supervisión electrónica. Dispone claramente que las disposiciones de esa ley aplicarán a todos los convictos que cumplen sentencia bajo custodia y supervisión del DCR. En virtud de lo anterior, "no cabe duda alguna de la clara intención legislativa de establecer una prohibición absoluta a conceder el privilegio de libertad al amparo de la supervisión electrónica a persona alguna que a partir de 1995 haya sido convicta de asesinato u otros delitos graves enumerados en la citada Ley Núm. 49".[20]

De hecho, tal y como concluyó la agencia recurrida, a tenor con el Plan de Reorganización del 2011, el recurrente continúa siendo inelegible para participar en dicho programa de pase extendido con monitoreo electrónico dado los delitos por los cuales resultó convicto.

El marco de revisión de este Tribunal se circunscribe a un estándar de razonabilidad. El recurrente no demostró que el DCR

---

[20] *Corretger v. Adm. Corrección,* 172 DPR 320, 326 (2007).

actuase de forma irrazonable, caprichosa, ilegal, o que se equivocara en la leyes y reglamentos que se le encomendó administrar.

En vista de lo anterior, y en atención a la norma de deferencia que rige la revisión de las decisiones administrativas, concluimos que la determinación recurrida se basó en el expediente administrativo y constituyó una actuación razonable de la agencia. En ese sentido, el recurrente no derrotó la presunción de corrección que cobija a las determinaciones administrativas. Por tanto, resolvemos que el DCR actuó correctamente y conforme a la legislación aplicable al denegar la solicitud del recurrente para participar del programa de pase extendido con monitoreo electrónico. Consecuentemente, procede confirmar la determinación recurrida.

## IV.

Por los fundamentos expuestos, se confirma la determinación recurrida.

**Notifíquese.**

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones